IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LOUIS D. RUSCITTO and )
CAROL A. RUSCITTO, )
    Plaintiffs, )
) Civil Action No. 11-824
vs. )
)
UNITED STATES OF AMERICA, )
    Defendant. )

# REPORT AND RECOMMENDATION

ROBERT C. MITCHELL, United States Magistrate Judge.

## I. Recommendation

On December 8, 2013, Defendant, the United States of America (the "Government"), filed a motion for summary judgment. In response, Plaintiffs, Carol and Louis Ruscitto, filed a cross motion for summary judgment on January 20, 2014. Both parties claim that no issue of material fact exists, and that they are entitled to judgment as a matter of law.

After careful review of the parties' cross motions for summary judgment, briefs in support, responses and replies, and upon independent review of the evidence of record, for the following reasons, it is respectfully recommended that Plaintiffs' motion for summary judgment [ECF No. 80] be denied and the Government's motion for summary judgment [ECF No. 77] be granted.

## II. Report

### A. Background

Plaintiff Louis Ruscitto was the president of a construction company named A&L, Inc. ("A&L") that engaged primarily in bonded projects with state and local government agencies in

Pennsylvania, Illinois and New York. Pls.' Br. in Supp. of Mot. for Summ. J. [ECF No. 81] at 2. In or about April 2005, A&L began experiencing financial setbacks and in May 2005, A&L entered into a surety agreement with Safeco Insurance Company ("Safeco"). *Id*. Safeco began financing and controlling the finances on all of A&L's bonded projects.[1] *Id*. Under the surety agreement, all of A&L's bonded project revenues, which accounted for approximately 75% of A&L's total revenue, expenses and proportionate share of office overhead ran through bank accounts controlled by Safeco. *Id*. at 2. According to Plaintiffs, Safeco did not authorize certain payment obligations, including A&L's employment tax obligations because Safeco wanted all of A&L's projects to remain "cash neutral," and did not want to fund expense payments in excess of revenues received. *Id*. These Safeco-imposed restrictions severely strained A&L's cash flow and its ability to meet its financial obligations, including the payment of its employment taxes. *Id*. Although A&L was enduring financial hardship, it used its unbonded revenues and funds that Safeco authorized to "pay as much as possible against the federal employment [tax] obligations." *Id*. at 3 (citing Herron Decl. [ECF No. 85] at ¶ 9). However, A&L failed to remit payment of all of its employment withholding taxes, commonly referred to as "trust fund taxes." *Id*. at 2. Under the Internal Revenue Code, if a company fails to pay such withholding taxes, the IRS may assess trust fund recovery penalties against the person or persons responsible for collecting, accounting for, and paying over such taxes. *See* 26 U.S.C. § 6672.

Due to A&L's failure to withhold the employment taxes, the IRS conducted an investigation as to the nonpayment of the trust fund amounts and made the determination that Louis Ruscitto was responsible for collecting, accounting for, and paying over the employment withholding taxes and that he willfully failed to do so. Def.'s Br. in Supp. of Mot. for Summ. J.

---

[1] A&L ceased doing business in 2007. Pls.' Br. in Supp. of Mot. for Summ. J. [ECF No. 81] at 3.

[ECF No. 78] at 2. On March 30, 2009, the IRS assessed trust fund recovery penalties against Louis Ruscitto for three tax periods: the taxable quarters ending: (1) September 30, 2005; (2) December 31, 2005; and (3) March 30, 2006. *Id*.

Subsequently, in or around May 2009, Plaintiffs filed an amended income tax return using Form 1040X for the 2003 income tax year, reporting an overpayment of tax due to a net operating loss carryback from A&L. *Id*. The IRS applied part of the overpayment to Louis Ruscitto's trust fund liability which fully satisfied the amount owed under the trust. *Id*. The remainder of the 2003 overpayment, totaling approximately $89,000, was refunded to Plaintiffs in 2009. *Id*.

Plaintiffs filed suit against the Government for the trust fund recovery penalty assessed to Louis Ruscitto and the misapplication of the overpayment. They claim that the trust fund penalty should not have been assessed to Louis Ruscitto because he was neither a person responsible for A&L's tax obligation, nor was he willful in failing to pay it under 26 U.S.C. § 6672. Pls.' Br. in Supp. of Mot. for Summ. J. [ECF No. 81] at 6. Plaintiffs also claim that the IRS misapplied the 2003 income tax overpayment to satisfy the trust fund recovery penalties and that Carol Ruscitto is entitled to a portion of the overpayment. *Id*. at 9-12. Both parties move for summary judgment on these claims. The Government argues that Louis Ruscitto was properly assessed the trust fund recovery penalties, that it properly applied the 2003 tax refund to the trust fund, and Carol Ruscitto is not entitled to a portion of the overpayment. Def.'s Br. in Supp. of Mot. for Summ. J. [ECF No. 78] at 5-14.

B. Standard of Review

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(c). A moving party is entitled to summary judgment if he demonstrates that "the nonmoving party has failed to make a sufficient showing of an essential element of [his] case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party bears the burden of adducing palpable evidence "establishing that there is a genuine factual dispute for trial" and may not merely rely upon "bare assertions or conclusory allegations" to survive summary judgment. *Hogan v. Twp. of Haddon*, 278 Fed.App'x 98, 101 (3d Cir. 2008) (citing *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982)). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied [only] when there is a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)). "Speculation, conclusory allegations, and mere denials are insufficient to raise genuine issues of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F.Supp.2d 402, 407 (E.D.Pa. 2000). The court should draw inferences "in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) *cert. denied* 507 U.S. 912 (1993).

Cross motions for summary judgment are

> no more than a claim by each side that it alone is entitled to summary judgment, and the making of such inherently contradictory claims does not constitute an agreement that if one is rejected the other is necessarily justified or that the losing party waives judicial consideration and determination whether genuine issues of material fact exist.

*Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir. 2008) (quoting *Rains v. Cascade Indust., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968)). Therefore, where cross motions for summary judgment are before the court, "[e]ach movant must show that no genuine issue of material fact

4

exists; if both parties fail to carry their respective burdens, the court must deny the motions." *Stine v. Pennsylvania State Police*, 2012 WL 959362, at *4 (M.D.Pa. March 21, 2012) (citing *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1023 (3d Cir. 2008)).

  C. <u>Discussion</u>

  The Government argues that it is entitled to summary judgment on the remaining counts because (1) the IRS properly assessed Louis Ruscitto with trust fund recovery penalties, as he was a responsible and willful person under Section 6672; and (2) the Ruscittos are not entitled to any refunds of income tax for 2003 because the tax overpayment was properly applied to the trust fund liabilities and Plaintiffs have received refund payments. See Def.'s Br. in Supp. of Summ. J. [ECF No. 78] at 5-14.

  Contrarily, Plaintiffs argue that they are entitled to summary judgment because (1) Louis Ruscitto was not the responsible party of A&L, Inc., nor was he willful under Section 6672 because he was not in control of A&L's finances; (2) Carol Ruscitto is entitled to her share of the refund based on IRS Revenue Ruling 74-611, 1974 C.B. 399 pertaining to joint returns and overpayments credited against separate tax liability; and (3) the IRS's calculation of Louis Ruscitto's trust fund penalty was excessive by $307,809.87 because the IRS misapplied voluntary payments made by A&L, Inc. and unilaterally changed the character of voluntary payments made by A&L, Inc. *See* Pls.' Br. in Supp. of Mot. for Summ. J. [ECF No. 81] at 6-15.

  The court will address each argument in turn.

  *1.* *Responsible and Willful Party under 26 U.S.C. § 6672(a)*

  Employers must withhold federal social security and income taxes from the wages of their employees under the Internal Revenue Code. *See* 26 U.S.C. §§ 3102, 3401, 3402. Such taxes are held in trust by the employer for the benefit of the United States. 26 U.S.C. § 7501(a).

Employers required to collect such funds held in trust are also subject to liability for failure to do so. Under the Internal Revenue Code ("IRC")

> [a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). "A section 6672 assessment against a responsible person is equivalent to the assessment of a tax[, and o]nce the IRS assesses a tax, a rebuttable presumption arises that the assessment is correct." *Brounstein v. United States*, 979 F.2d 952, 954 (3d Cir. 1992) (internal citations omitted). *See also United States v. Fior D'Italia*, 536 U.S. 238, 242 (2002) ("It is well established in the tax law that tax assessment is entitled to a legal presumption of correctness."). Where the government introduces certified copies of the assessment, the burden shifts to the taxpayer to prove that the assessment against him under section 6672 is "incorrect by establishing either (1) that he was not a responsible person within the meaning of the statute, or (2) that he did not willfully fail to pay the amount due to the IRS." *Id*. (citing *Psaty v. United States*, 442 F.2d 1154, 1160 (3d Cir. 1971)).

The IRC defines a "person" as an "officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs." 26 U.S.C. § 6671(b). A "responsible" person is one who is "required to collect, truthfully account for or pay over any tax." *Id*. (citing *Quattrone Accountants, Inc. v. IRS*, 895 F.2d 921, 927 (3d Cir. 1990) (additional citations omitted)). Therefore whether a person is "responsible" is "a matter of status, duty, or authority, not knowledge." *Greenberg v. United States*, 46 F.3d 239, 243 (3d Cir. 1994) (quoting *Brounstein*,

979 F.2d at 954). "A responsible person need not have exclusive control over the corporation's finances, but must have at least significant control over disbursements of the corporation's funds." *Stranahan v. United States*, 2010 WL 3323228, at *3 (E.D.Pa. Aug. 19, 2010) (citing *Greenberg*, 46 F.3d at 242-43 (additional citations omitted)). To determine whether a person is "responsible" for paying over withholding taxes, the Court of Appeals for the Third Circuit has delineated the following factors to consider:

> (1) contents of the corporate's bylaws, (2) the ability to sign checks on the company's bank account, (3) signature on the employer's federal quarterly and other tax returns, (4) payment of other creditors in lieu of the United States, (5) identity of officers, directors, and principal stockholders in the firm, (6) identity of individuals in charge of hiring and discharging employees, and (7) identity of individuals in charge of the firm's financial affairs.

*Brounstein*, 979 F.2d at 954-55. *See also United States v. DeMuro*, 677 F.3d 550, 559 (3d Cir. 2012). Additionally, more than one person can be a "responsible person" under Section 6672. "That another person also may be liable under Section 6672 does not affect the liability of the person presently subject to suit. Section 6672 imposes joint and several liability on each responsible person, and each responsible person can be held for the total amount of withholding not paid." *Quattrone Accountants, Inc. v. I.R.S.*, 895 F.2d 921, 926 (3d Cir. 1989) (internal citations omitted).

In a substantially similar case, the district court held that a corporation's "lockbox" arrangement with a bank in which all corporate income was directed to a lockbox from which the bank applied the money to the corporation's various obligations did not end the corporate officer's status as a "responsible person" for purposes of the corporation's obligations to pay federal taxes withheld from employees' wages. *Lee v. United States*, 951 F.Supp. 79, 82-83 (W.D.Pa. 1997). The court acknowledged that "the duty to pay employment taxes that have been

7

withheld is a statutory one, and cannot be delegated away by a financial agreement. . . . [T]o hold otherwise would force the government into becoming an unwilling partner in an enterprise of questionable finances at the whim of the taxpayers. Indeed, who knows how many floundering companies might choose the lockbox technique in order to attempt to keep operating if the law so allowed." *Id*. at 83. Additionally, the Court of Appeals for the Second Circuit in *Kalb v. United States* rejected a taxpayer-company's argument that because a bank controlled the delinquent company's finances that the financing agreement between the company and the bank eliminated the company's statutory responsibility to remit the employment taxes. *Kalb v. United States*, 505 F.2d 506 (2d Cir. 1974). Several appellate courts have similarly held that financing agreements in which a third party controls a corporation's financial affairs does not absolve corporate officers from being responsible for remitting withheld employment taxes. *See Bradshaw v. United States*, 83 F.3d 1175, 1180-81 (10th Cir. 1995) ("corporate officer may not escape liability as a 'responsible party' under [Section] 6672 by voluntarily entering into agreements which permit preferring other creditors to the government."); *Rykoff v. United States*, 40 F.3d 305, 308 (9th Cir. 1994) ("the fact that a bank exercises significant control over payments to creditors does not necessarily absolve the corporate officer of liability under [Section] 6672."); *Gustin v. United States*, 876 F.2d 485, 491-92 (5th Cir. 1989) ("One does not cease to be a responsible person merely by delegating that responsibility to others.").

Here, Plaintiffs bring the exact argument that was rejected in *Lee* and several of the appellate circuit courts. They argue that Louis Ruscitto relinquished all control of A&L's revenue from bonded contracts, "virtually all" of the bonded revenue was paid to Safeco, a Safeco representative had to sign the A&L payment checks established by Safeco, Louis Ruscitto could not issue a company check without Safeco's signature and "Safeco had the ultimate say in

whether funds were authorized to make employment tax deposits and payments." Pls.' Br. in Supp. of Mot. for Summ. J. [ECF No. 81] at 7. Additionally, Plaintiffs argue that Louis Ruscitto did not prepare, file or transmit any payroll tax returns on behalf of A&L, Inc., and all payroll tax returns were prepared by the Chief Financial Officer of A&L, Michelle Heron. *Id*.

Plaintiffs also rely on *Quattrone* for a finding that Louis Ruscitto is not a responsible person under Section 6672. In *Quattrone*, an accounting firm was found to be the responsible party because it had taken over control of all of the company's finances including calculating payroll, distributing checks, paying the company's bills and making decisions in regard to company debts. *Quattrone*, 895 F.2d at 923. *Quattrone*, however, is inapplicable here. In *Quattrone*, the accounting firm had been hired by the company and controlled all of the company's financial affairs for approximately twenty years. *Id*. Plaintiff met daily with the company's president to discuss the company's financial affairs, it calculated and distributed paychecks, it directly received all of the company's bills, it paid all standard monthly bills by use of a signature stamp without prior company approval, it made joint decisions with the company president to pay debts outside of the standard monthly payment, it prepared and filed the company's federal, state and local tax returns and it procured and managed all of the company's loans. *Id*. at 923. For all intents and purposes, the accounting firm acted as the company's internal accounting department.

Here, the duties of Safeco are undisputed and do not rise to the level of involvement as the accounting firm in *Quattrone*. The agreements between Safeco and A&L gave Safeco the right to monitor A&L's finances, including income and disbursements, and payments to A&L were deposited into bank accounts that Safeco had access to. These agreements only included payments and disbursements for bonded contracts and not for all of the contracted projects or

9

expenses incurred by A&L. Pls.' Br. in Supp. of Mot. for Summ. J. [ECF No. 81] at 7. In 2005 to 2006 approximately 75% of A&L's total revenue was attributable to bonded revenue. Pls.' Statement of Material Facts [ECF No. 83] at ¶ 14. Therefore, at least some of A&L's revenue was unencumbered by Safeco and was in A&L's complete control. Additionally, the agreement did not shift A&L's payroll tax responsibilities to Safeco, nor provide that Safeco would pay A&L's payroll tax obligations. Def.'s Statement of Material Facts [ECF No. 79] at ¶¶ 26, 28. Moreover, Louis Ruscitto has provided by affidavit that Safeco was not responsible for withholding the employment taxes, it was A&L who was responsible for the payroll. Def.'s Br. in Supp. of Mot. for Summ. J. [ECF No. 78] at 8 (citing 6/30/2008 Affidavit of Louis Ruscitto [ECF No. 23-7] at ¶ 7). The process to complete payroll for the bonded contracts was for A&L to submit a request to Safeco for funds pertaining to payroll, Safeco would then disburse the funds to A&L's payroll account, and A&L would prepare the payroll and issue paychecks to their employees. *Ibid.*[2] The crux of Plaintiffs' argument is that because Safeco did not remit enough money to cover all of A&L's expenses, including the payment of the tax, Louis Ruscitto should not be responsible for the trust fund penalty.

The court disagrees and finds that Louis Ruscitto is a responsible person under Section 6672. He was the president and 100% owner of A&L, had the power to hire and fire employees, had the authority to sign checks, loans and other agreements to bind A&L, made financial decisions for A&L, including which creditors to pay and how much, entered into the surety agreements with Safeco, authorized payments of federal payroll taxes, authorized payments of

---

[2] Specifically, Louis Ruscitto provided by affidavit that "Safeco's payment procedure is summarized as follows: A&L sends payroll requests to Safeco's designated consultants with a payroll summary schedule and backup payroll transaction distribution schedules. Safeco's consultants present A&L's Schedule of Funding Request to Safeco for approval; Safeco prepares, signs and sends a check to A&L for the approved amount. Once received, A&L deposits the check signed by a Safeco representative into the payroll account in preparation for payroll." 6/30/2008 Affidavit of Louis Ruscitto [ECF No. 23-7] at ¶ 7.

debts other than the federal taxes during the time that A&L was behind in paying its payroll taxes, opened and/or closed bank accounts for A&L, guaranteed or co-signed loans for A&L and signed or counter-signed checks on behalf of A&L. *See* Def.'s Br. in Supp. of Mot. for Summ. J. [ECF No. 78] at 6; Def.'s Statement of Material Facts [ECF No. 79] at ¶ 11. Lastly, Plaintiffs contend that it was A&L's Chief Financial Officer Michelle Herron who signed and filed A&L's tax returns, and not Louis Ruscitto and this should somehow relinquish Louis Ruscitto's tax responsibility. It does not. Louis Ruscitto, as president and 100% owner of A&L had control over A&L's finances whether or not he exercised such control.[3] As such, Louis Ruscitto is a responsible person, properly assessed with the trust fund liability under Section 6672.

Furthermore, Louis Ruscitto willfully failed to pay the employee trust fund taxes under Section 6672.

The IRS may only impose section 6672 liability if the responsible person "willfully" fails to collect, account or pay over the withheld taxes. 26 U.S.C. § 6672(a). "A willful decision under section 6672 is defined as a 'voluntary conscious and intentional decision to prefer other creditors over the Government.'" *Lee*, 951 F.Supp. at 83 (quoting *Greenberg v. United States*, 46 F.3d 239, 244 (3d Cir. 1994)). A responsible person is willful if he "pays other creditors in preference to the IRS knowing that the taxes are due, or with reckless disregard for whether taxes have been paid." *Greenberg*, 46 F.3d at 244 (citations omitted) (internal quotations omitted). A "reckless disregard" for whether taxes have been paid

> includes failure to investigate or correct mismanagement after being notified that withholding taxes have not been paid. The taxpayer need not act with an evil motive or bad purpose for his action or inaction to be willful. Any payment to other creditors,

---

[3] While it is clear from the record that Ms. Herron was Chief Financial Officer and controlled A&L's finances during the time in question, her tax responsibility or any arguments of indemnification or contribution was not brought before the court. Additionally, because this tax liability is joint and several, it is proper to assess the tax to Louis Ruscitto.

> including the payment of net wages to the corporation's employees, with knowledge that the employment taxes are due and owing to the Government, constitutes a willful failure to pay taxes. . . . It is no defense that the corporation was in financial distress and that funds were spent to keep the corporation in business with an expectation that sufficient revenue would later become available to pay the United States.

*Id*. If the responsible person "clearly ought to have known that" there was a "grave risk" that the taxes were not being paid, and the responsible person "was in a position to find out for certain very easily[,]" he has recklessly disregarded the payment of the tax liabilities. *United States v. Vespe*, 868 F.2d 1328, 1335 (3d Cir. 1989) (citations omitted).

Louis Ruscitto again argues that he was not willful in failing to pay the taxes because he was "at the mercy" of Safeco such that it was impossible for him to prefer other creditors to the IRS because Safeco controlled A&L's finances. *See* Pls.' Br. in Supp. of Mot. for Summ. J. [ECF No. 81] at 8. The fact that the surety agreement entered into between A&L and Safeco did not account for or cover all of A&L's expenses does not negate a finding that Louis Ruscitto willfully failed to pay employment taxes. It is undisputed that payments made by A&L were approved by Louis Ruscitto, that employee wages was a debt that A&L "always paid," and A&L paid other expenses and utilities that Safeco did not cover. Def.'s Statement of Material Facts [ECF No. 79] at ¶¶ 35, 43. Moreover, Louis Ruscitto knew the taxes were not being paid, or recklessly disregarded the fact that they were not being paid. In March 2005, A&L had a meeting with Safeco, which Louis Ruscitto attended, to discuss the unpaid employment taxes. *Id*. at ¶ 45. Additionally, Louis Ruscitto does not claim that he had no knowledge of the unpaid employment taxes, just that his hands were tied due to the lack of revenue that A&L was bringing in, and the lack of funds being disbursed by Safeco. Knowing that A&L's employment taxes were not being paid, Louis Ruscitto directed and permitted payments to be made to A&L's

12

creditors, including its own employees, over the IRS. At a minimum, Louis Ruscitto failed to correct the mismanagement of finances after he learned the employment taxes were not being paid, constituting reckless indifference. The court therefore finds that Louis Ruscitto willfully failed to pay the employment tax obligations under Section 6672.

Because Louis Ruscitto was a responsible person and willfully failed to pay the taxes, he was properly assessed with the trust fund penalty and cannot claim he is entitled to a refund in that amount. Accordingly, Plaintiffs' motion for summary judgment on this point should be denied, and the Government's motion for summary judgment should be granted.

*2. 2003 Income Tax Refund*

The Government next argues that Plaintiffs' claim for a refund of the 2003 income tax should be rejected because Plaintiffs have already received the full benefit of any overpayment of 2003 income tax and the Government properly applied the refund under 26 U.S.C. § 6402(a). To the contrary, Plaintiffs claim that Carol Ruscitto was entitled to recover either some or all of the overpayment of the 2003 income tax.

26 U.S.C. § 6402 permits the IRS to "credit the amount of [any] overpayment [of taxes,] including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, . . . refund any balance to such person." 26 U.S.C. § 6402(a). Additionally, an overpayment on a joint return "is apportionable to a spouse to the extent that he or she contributed to the overpaid tax." *Culpepper-Smith v. United States*, 1998 WL 544964, at *9 (E.D.Pa. Aug. 24, 1998) (citing *Rosen v. United States*, 397 F.Supp. 342, 343-44 (E.D.Pa. 1975)). *See also* Rev. Rul. 74-611, 1974-2 C.B. 399. A jointly filed tax return "does not itself create equal property interests for each party in a refund. Spouses who file a joint return have separate interests in any overpayment, the interest of each

depending upon his or her relative contribution to the overpaid tax." *United States v. Elam*, 112 F.3d 1036, 1038 (9th Cir. 1997); *Gordon v. United States*, 757 F.2d 1157, 1160 (11th Cir. 1985) (same). A couple's "filing of a joint return does not have the effect of converting the income of one spouse in the income of the other." *Rosen*, 397 F.Supp. at 344 (citations omitted).

In a case with nearly identical facts to the one at hand, the plaintiffs, husband and wife, filed a joint income tax return for the years at issue. *Id.* at 343. All of the income during those years was attributable to the husband who ran his own business. *Id.* In a subsequent tax year, the plaintiffs claimed a tax refund due to a net operating loss. *Id.* The IRS awarded the overpayment to plaintiffs, but applied it to tax liabilities for employment taxes withheld from the husband's employees but not remitted to the IRS.[4] *Id.* The wife filed a timely claim for her portion, one-half, of the overpayments applied to the husband's tax liabilities.[5] *Id.* In reviewing the applicable law and Revenue Ruling 74-611, 1974-2 C.B. 399, 1974 WL 34502,[6] the court found that the

---

[4] Unlike here, however, the husband admitted that he was personally liable for these sums. *Rosen*, 397 F.Supp. at 343.

[5] It was also conceded that should the wife be permitted her share of the refund, one-half of the refund was properly applied to the husband's tax liability. *Rosen*, 397 F.Supp. at 343.

[6] The *Rosen* court stated:

Revenue Ruling 74-611, which expressly revoked Revenue Rulings 56-92, 1956-1 C.B. 564, and 71-324, 1971-2 C.B. 410, lays plaintiffs' claim completely to rest. There the husband and wife filed a joint return wherein the entire tax liability was paid by the wife. Subsequently, it was determined that there was an overpayment, which the Service credited against tax due from the husband for a prior year. Reasoning that because a joint income tax return does not create new property interests for a husband or wife in each other's income tax overpayment, Revenue Ruling 74-611 declares that the Service's action was improper. The Ruling concludes:

> In this case, the wife having paid the entire amount of the tax is entitled to the entire amount of the overpayment. Accordingly, the Service may not credit the overpayment on the joint return against the separate tax liability of the husband for a prior year.

Applying these principles to the instant facts, I am persuaded that the Service correctly credited the total 1968 and 1969 overpayment against the 1971 employment tax liability of the plaintiff husband. Mr. Rosen produced the income which required the payment of taxes, incurred the loss which subsequently meant those taxes were overpaid, and it is his tax liability which is being reduced by the Service's application of those overpayments.

*Rosen*, 397 F.Supp. at 344-345.

IRS correctly credited the entire tax overpayment against the husband's employment tax liability because the husband "produced the income which required the payment of taxes, incurred the loss which subsequently meant those taxes were overpaid, and it [was] his tax liability which [was] being reduced by the Service's application of those overpayments[,]" and therefore, the wife was not entitled to any of the overpayment. *Id.* at 344-45.

In 2004, Plaintiffs filed a joint income tax return for the 2003 tax year. In 2003, Plaintiffs paid federal income tax from a withholding of wages in the amount of $286,242. Def.'s Statement of Material Facts [ECF No. 79] at ¶ 54. It is undisputed that the amount of the tax was withheld from Louis Ruscitto's wages only. *Id*. Plaintiffs reported an overpayment of tax arising from income taxes withheld from Louis Ruscitto's wages, a $200,000 credit that Plaintiffs elected to apply from an overpayment of their 2002 incomes tax. *Id*. at ¶ 9. Plaintiffs elected to apply a portion of their 2003 overpayment to their 2004 income taxes. *Id*. at ¶ 5. The IRS issued a refund of the 2003 overpaid tax in the amount of $26,076.33, including interest. *Id*.

Subsequently, in 2009, the Plaintiffs filed an amended joint tax return for the 2003 taxable year pursuant to a tax carryback, and reported additional overpayments in the amount of $434,293 as a result of the net operating losses and loss from worthless securities from the 2005 year. *Id*. at ¶ 52. This overpayment was applied, in part, to Louis Ruscitto's trust fund recovery penalties and to Plaintiffs' 2006 income taxes. *Id*. After applying the overpayment to Louis Ruscitto's tax liabilities, the Plaintiffs received a refund in the amount of $89,226.51 in 2009. *Id*.

While the Government argues the Carol Ruscitto did not earn any wages nor had any taxes withheld in 2003, Plaintiffs argue that she had taxable income of $87,303.62 from Citicapital Commercial Corporation and over $25,000 in other income. Plaintiffs point this court's attention to a declaration of Lawrence E. Bolind, Jr. who states Carol Ruscitto had this

15

income in 2003. *See* Declaration of Lawrence E. Bolind, Jr. [ECF No. 84]. First, Plaintiffs refers to the wrong exhibit for this statement that Carol Ruscitto had income in 2003. Second, from reviewing all exhibits attached to Bolind's declaration, he apparently is referring to four separate 1099-C forms submitted by Carol Ruscitto for cancellation of debt for a business loan, and considers this as Carol Ruscitto's income in making this statement. It is entirely unclear where Bolind obtains the $25,000 from "other earnings" as there is no reference to that amount in any of the attached exhibits. This court will not opine on whether a Form 1099-C is appropriately characterized as income for Carol Ruscitto, because Plaintiffs do not provide any sort of legal analysis on this point in their briefing or responses to the Government's motion for summary judgment. *See Reynolds v. Wagner*, 128 F.3d 166, 178 (3d Cir. 1997) (holding that a single conclusory statement in a brief without more results in a waiver of that argument). Additionally, there is no other evidence of record that Carol Ruscitto had any income for the taxable years at issue. Therefore, Plaintiffs have not met their burden by showing that the IRS assessment was incorrect, or that Carol Ruscitto in any way contributed to the overpaid tax such that she would have an interest in the overpayment.

Accordingly, Plaintiffs' motion for summary judgment on this point should be denied and the Government's motion should be granted.

### 3. *Misapplication of Trust Fund Account Payments*

Lastly, Plaintiffs argue that the Government's calculation of Louis Ruscitto's trust fund penalty is excessive by $307,809.87 because it misapplied voluntary payments made by A&L and unilaterally changed the character of A&L's voluntary payments under certain provisions of the Internal Revenue Manual. *See* Pls.' Br. in Supp. of Mot. for Summ. J. [ECF No. 81] at 9. A broader discussion of this argument is not warranted, because it is clear that the Government's

16

noncompliance with the Internal Revenue Manual "does not render an action of the IRS invalid. Procedures in the Internal Revenue Manual are intended to aid in the internal administration of the IRS; they do not confer rights on taxpayers." *Matter of Carlson*, 126 F.3d 915, 922 (7th Cir. 1997), *cert. denied*, 523 U.S. 1060 (1998). *See also In re Pransky*, 318 F.3d 536, 544, n. 7 (3d Cir. 2003) (same); *Valen Mfg. Co. v. United States*, 90 F.3d 1190, 1194 (6th Cir. 1996) (same); *Groder v. United States*, 816 F.2d 139, 142 (4th Cir. 1987) (same); *Thomas v. United States*, 1998 WL 892617, at *5 (D.C. Ill. Sept. 16, 1998) (no private right of action for taxpayer where the IRS misapplied payments in contravention of the Internal Revenue Manual). Accordingly, Plaintiffs' motion for summary judgment on this point should be denied, and the Government's motion for summary judgment should be granted.

D. Conclusion

For the foregoing reasons, it is respectfully recommended that Plaintiffs' motion for summary judgment be denied, and the Government's motion for summary judgment be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules pertaining to Magistrate Judges, the parties are permitted until April 15, 2014 to file written objections to this Report and Recommendation. Failure to do so may waive the right to appeal. Any party opposing written objections shall have fourteen days after the service of such objections to respond thereto.

Dated: April 1, 2014

Respectfully submitted,

/s Robert C. Mitchell
ROBERT C. MITCHELL
United States Magistrate Judge

cc: Chief District Judge Joy Flowers Conti
M. Scott Zegeer
Christopher D. Belen
Michael A. Comber